NO. 07-02-0315-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 12, 2003

_____

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, APPELLANT

V.

SANDEEP RAO, APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-517,844; HONORABLE MACKEY K. HANCOCK, JUDGE

_____

Before JOHNSON, C.J., QUINN, J., and BOYD, S.J.[1]

**OPINION**

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

This is an interlocutory appeal from a trial court order overruling a plea to the jurisdiction and granting a temporary injunction. For reasons we later state, we modify the temporary injunction and, as modified, affirm the trial court order.

The suit giving rise to the temporary injunction was brought by appellee Sandeep Rao (Rao) against appellant Texas Tech University Health Sciences Center (Tech). In the suit, Rao asserted his free speech rights had been circumscribed by Tech's action in dismissing him from Tech's School of Medicine and sought equitable relief requiring Tech to reinstate him. He sought, and obtained, the temporary injunction with which we are concerned in which Tech was ordered to immediately reinstate Rao "as a student in good standing."

Factual Background

In 2002, Rao was enrolled at Tech in the second year of a joint MD/MBA program. He also served as a columnist on Tech's student newspaper, the *University Daily*. On January 21, 2002, Rao and another student attended an autopsy[2] conducted by Dr. Jerry Spencer, the director of Tech's Division of Forensic Pathology. Dr. Spencer was also the Lubbock County Medical Examiner. Prior to attending the autopsy, Rao signed a confidentiality agreement in which he agreed he would not reveal the name of the decedent or "discuss the nature of any diagnosis or facts of the case with anyone outside of the professional staff."

---

[2]Attending an autopsy is part of the medical school curriculum.

On January 24, 2002, Rao wrote a column in the *University Daily* about his autopsy experience. In the column, with some particularity, he described the date and time of the autopsy, that it was performed by Dr. Spencer, and the stated cause of death. He also made some remarks about Dr. Spencer's demeanor as he conducted the autopsy. On January 27, 2002, Dr. Spencer filed a complaint with Dr. Terry McMahon, the Associate Dean for Education Programs, in which he alleged that in publishing the column, Rao had violated portions of the University Code of Professional and Academic Conduct. In particular, he claimed that Rao had failed to comply with directions of university officials, had failed to comply with the confidentiality agreement, and had made derogatory remarks about Dr. Spencer.

After receiving the complaint, Dr. McMahon notified Rao of the allegations and set a hearing for February 18, 2002. On February 21, 2002, as a result of the hearing, Dr. Richard Homan, the Dean of the Schools of Medicine and Biomedical Sciences, notified Rao that the Hearing Committee had recommended that he be dismissed and that Dr. Homan saw no reason not to accept the recommendation. Dr. Homan also advised Rao of his right to appeal the decision to an appeal panel. A hearing was held before the appeal panel on March 8, 2002. On March 18, 2002, Rao was notified that the appeal panel had found against him on the charge of unprofessional conduct, had recommended that Rao receive probation through his third year clerkships and be required to write letters of apology to the university paper and to Dr. Spencer.

3

Additionally, on February 21, 2002, Dr. McMahon formally notified Rao of allegations against him of academic dishonesty in connection with the alleged offer to deliver a copy of a past year's neurosciences exam that had not been released as a study aid. A hearing on that allegation was conducted, as a result of which the Hearing Committee found against Rao and recommended that he be placed on academic probation, seek professional counseling, and not be allowed to serve as a peer tutor or allowed to hold any medical school office. On March 27, 2002, Dr. Homan notified Rao that the recommended sanctions would be placed immediately in force as interim sanctions pending any appeal. He also notified Rao of his right to appeal the decision of the Hearing Committee. Rao chose to appeal and, on April 10, 2002, after an April 3 hearing, the appeal panel found the evidence was sufficient to show that Rao committed the offense alleged and upheld the sanctions recommended by the Hearing Committee.

On April 25, 2002, Dr. Homan issued his final decision on both the academic dishonesty and unprofessionalism allegations. In doing so, he summarized the findings of the Hearing Committees and the appeal panels in both cases, and concluded that "in light of these two, separate, serious incidents," he would dismiss Rao immediately from the School of Medicine. This, of course, led to the underlying lawsuit and to the issuance of the temporary injunction before us.

Questions Presented

4

Tech challenges the temporary injunction by presenting four issues for our decision. Those issues are: 1) the trial court erred in denying Tech's plea to the jurisdiction because Tech, as a state agency, has sovereign immunity; 2) the injunction is void because it fails to set forth the reasons for its issuance as required by Rule 683 of the Texas Rules of Civil Procedure; 3) the trial court abused its discretion in granting the temporary injunction because Rao failed to establish a probability of recovery; and 4) the temporary injunction is overly broad and constitutes an unconstitutional prior restraint on speech.

## Jurisdiction

In argument under its first issue, Tech contends that Rao's failure to name an individual in authority as a defendant in his suit deprived the trial court of jurisdiction to consider his claim for reinstatement because Tech, as a state agency, has sovereign immunity against a claim for unlawful actions of its officials. Thus, as no suit of that nature may be maintained against it, the trial court had no jurisdiction to issue its interlocutory injunction. In support of that position, Tech primarily relies upon *Bagg v. Univ. of Texas Medical Branch*, 726 S.W.2d 582 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.). In that case, the plaintiff pled a variety of causes of action arising out of an alleged wrongful employee termination against both supervisory employees of the University of Texas Medical Branch and the entity itself. The trial court granted a dismissal and summary judgment against all the defendants. As relevant here, the appellate court affirmed the dismissal against the Medical Branch and in doing so, opined in rather broad

5

language that suits premised upon the alleged unlawful or unauthorized actions of state officials are not considered acts of the state agency, and because they are not state actions and the state cannot be a proper party to sue, trial courts have no jurisdiction and such suits may only be maintained against the individuals who were alleged to have acted unlawfully. *Id.* at 585. Rao also cites cases such as *Turner v. Texas Dept. of Mental Health & Mental Retardation*, 920 S.W.2d 415, 419 (Tex. App.–Austin 1996, writ denied); *Dillard v. Austin Indep. School Dist.*, 806 S.W.2d 589, 598 (Tex. App.–Austin 1991, writ denied); and *Battleship Texas Advisory Board v. Texas Dynamics, Inc.*, 737 S.W.2d 414, 418 (Tex. App.–Houston [14th Dist.] 1987, writ dism'd w.o.j), which cite and rely upon *Bagg* in arriving at similar holdings.

However, in *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex. 1995), the Texas Supreme Court had occasion to consider whether there was an implied cause of action for damages as a remedy for unconstitutional conduct under the free speech and free assembly clauses of the Texas Constitution. In the course of its opinion, it performed an historical analysis of such constitutional questions and concluded that although no such actions for damages may be maintained, aggrieved persons may assert direct claims for *equitable* relief against governmental entities for violations of the Texas Bill of Rights. *Id.* at 149. Earlier, in *Director of Dept. of Agriculture & Environment v. Printing Industries Ass'n*, 600 S.W.2d 264 (Tex. 1980), the court opined that an entity or person whose rights have been violated by the unlawful action of a state official might bring a suit to remedy the violation or prevent its occurrence. *Id.* at 265-66*.* Indeed, in *Alcorn v. Vaksman*, 877

6

S.W.2d 390, 403-04 (Tex. App.--Houston [1st Dist.] 1994, writ denied), and *Harrison v. Texas Dep't of Criminal Justice–Institutional Div.*, 915 S.W.2d 882, 888 (Tex. App.--Houston [1st Dist.] 1995, no writ), the same court that decided *Bagg* noted that although there may not be a cause of action for damages, a plaintiff whose constitutional rights have been violated may sue for equitable relief. *See also Texas State Employees Union v. Texas Workforce Comm'n,* 16 S.W.3d 61, 66-67 (Tex. App.--Austin 2000, no pet.); *University of Texas System v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.--Fort Worth 1997, writ denied); *Bohannan v. Texas Bd. of Criminal Justice*, 942 S.W.2d 113, 118 (Tex. App.--Austin 1997, writ denied).

The trial court had jurisdiction to consider Rao's request for equitable relief. Tech's first issue is overruled.

Failure to State Reasons for Issuance

In pertinent part, Rule of Civil Procedure 683 provides that every order granting an injunction or restraining order "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." Under its second issue, Tech's challenge is limited to the asserted failure of the temporary injunction to set forth the reasons for its issuance. In the order granting the temporary injunction, the trial court found that Rao "tendered evidence of imminent harm, irreparable injury and an inadequate legal remedy."

7

In advancing its challenge, Tech points out the admonition in *Interfirst Bank San Felipe, N.A. v. Paz Construction Company,* 715 S.W.2d 640 (Tex. 1986), that the "requirements of Rule 683 are mandatory and must be strictly followed." *Id.* at 641. Particularly citing *Northcutt* v. *Warren,* 326 S.W.2d 10 (Tex. Civ. App.--Texarkana 1959, writ ref'd n.r.e.), and *University Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex. Civ. App.--San Antonio 1981, no writ), Tech contends that the reasons stated by the trial court for its issuance of the temporary injunction were mere conclusory statements and were insufficient to comply with Rule 683 requirements of specificity.

Rao responds that this question was not preserved for appellate review because Tech never made any trial court complaint on the basis it now raises. In relevant part, Texas Rule of Appellate Procedure 33.1(a) provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was timely presented to the trial court with sufficient specificity to make the trial court aware of the grounds for complaint unless the specific grounds were apparent from the context. At the injunction hearing, no presentation or objection was made to the temporary injunction on the basis now raised by Tech.

There is a split of authority on the question of whether a party can waive the right to complain of a failure of a temporary injunction to comply with Rule 683. While the Texas Supreme Court has not written on the subject, the great majority of the Courts of Appeal who have considered the question, without a great deal of discussion, have concluded that

8

the instruction of the court in *Paz* that the requirements of Rule 683 are mandatory means that the right to make appellate complaint of a failure to strictly comply with the rule is not waived by the failure to make a trial court complaint on that basis. *See Big D Properties, Inc. v. Foster*, 2 S.W.3d 21, 23 (Tex. App.--Fort Worth 1999, no writ), and *360 Degree Communications Co. v. Grundman*, 937 S.W.2d 574, 575 (Tex. App.--Texarkana 1996, no writ).

However, in *Emerson v. Fires Out, Inc.*, 735 S.W.2d 492 (Tex. App.--Austin 1987, no writ), an appeal from the grant of a temporary injunction, the court noted that the general principles of sound judicial administration would appear to require that any objections to the form and content of an injunction be pointed out to the trial court at a time when the errors could be corrected. It further observed that "[i]t serves no good purpose to permit appellants to lie in wait and present this error in form for the first time on appeal." *Id.* at 494. Applying Texas Rule of Appellate Procedure 52(a), the progenitor of present Rule 33.1(a), the court held that the failure to make a trial objection to the form of the injunction waived the right to an appellate complaint on that basis. *Id.* at 493-94. We agree with that reasoning.

Bottomed on its premise that its right to complain was not waived, Tech also argues that the trial court's stated reasons for issuing the injunction were not sufficiently specific to meet the requirements of Rule 683. In doing so, it cites and relies upon *University Interscholastic League v. Torres*, 616 S.W.2d 355 (Tex. Civ. App.--San Antonio 1981, no

9

writ).  In that case, the court opined that a recitation of "no adequate remedy at law" and "irreparable harm" was conclusory and not sufficient to comply with Rule 683.  *Id.* at 358.  However, in the recent case of *Pinebrook Properties, Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487 (Tex. App.--Texarkana 2002, pet. denied), the court held that a recitation of the reasons an injunction issued was because the defendants had no adequate remedy at law, the rights involved were unique and irreplaceable, and money damages would not be a sufficient remedy were sufficient to meet Rule 683 requisites.  *Id.* at 504-05.  We agree with that holding.  The reasons listed in the injunction before us are very similar to those before the *Pinebrook* court and are sufficient to comply with Rule 683.  For the above reasons, Tech's second issue is overruled.

Failure to Establish Probability of Recovery

To be entitled to a temporary injunction, an applicant must show a probable injury and a probable right to recover at the final hearing.  *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993).  The decision to grant or deny a temporary injunction will only be reversed on a showing of an abuse of discretion.  *Anderson Chemical Company, Inc. v. Green*, 66 S.W.3d 434, 437 (Tex. App.--Amarillo 2001, no pet.).  A trial court abuses its discretion when it misapplies the law to the facts or when the evidence does not reasonably support the findings.  *Id.*  In making our review, we draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment.  *Id.*  Where, as here, the

10

trial court made no findings of fact and conclusions of law, the judgment may be upheld on any legal theory supported by the evidence. *Id*.

Tech argues that the injunction was improperly entered because there is no evidence showing that Rao was expelled for having engaged in protected speech. In relevant part, article I, section 8 of the Texas Constitution provides: "Every person shall be at liberty to speak, write or publish his opinions on any subject . . . ." Those free speech rights are greater than those protected by the First Amendment to the United States Constitution. *See e.g., Davenport v. Garcia*, 834 S.W.2d 4, 10-12 (Tex. 1992); *Alcorn v. Vaksman*, 877 S.W.2d at 401. The Texas Constitution, in positive terms, guarantees that every person has the right to speak, write, or publish their opinion on any subject, while the Federal Constitution expresses First Amendment rights in negative terms and simply restricts governmental interference with such freedoms. *Jones v. Memorial Hosp. System*, 746 S.W.2d 891, 893 (Tex. App.--Houston [1st Dist.] 1988, no writ). Even though a difference exists between the two guarantees, federal cases have historically been looked to by Texas courts as an aid in determining free speech questions. The reasoning of the Texas courts being if the evidence is sufficient to show a violation of federal standards, it must also be sufficient to show a violation of state guarantees. *See e.g., Vaksman*, 877 S.W.2d at 401.

Whether speech addresses a matter of public concern is determined by the content, form, and context of the speech. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684,

11

1690, 75 L.Ed.2d 708 (1983). When the speech relates to any matter of political, social, or other concern to the community, it addresses a matter of public concern and it is not necessary that the speech allege a breach of public trust. *Id.* 461 U.S. at 146. Indeed, the Supreme Court has held that a public employee's comment in regard to an attempt upon the life of the President of the United States to the effect that if another attempt was made to assassinate the President, ". . . I hope they get him," was a comment about a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 386-87, 107 S.Ct. 2891, 2898, 97 L.Ed.2d 315 (1987).

In *Mt. Healthy City Sch. Dist. Bd. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a school district had failed to rehire a non-tenured teacher because of, among other things, a telephone call made to a local radio station. The Court set out the standards by which an individual's entitlement to constitutionally protected free speech would be determined. Under that test, the individual must have shown (1) his conduct was protected, and 2) his conduct was a motivating factor in the action for which he seeks relief. *Id.* 429 U.S. at 287.

We agree with Tech that for Rao's speech activities to be constitutionally protected, they must have addressed a matter of public concern. *Id.* His column was printed in the university newspaper, a publication which the trial judge could reasonably conclude was of general circulation. Further, the column dealt with forensic pathology and medical technique, matters which the trial judge could reasonably conclude were of public interest

12

and concern. Additionally, the record reveals that Dr. Spencer's complaint was fact intensive in the sense that it was directed at the references made by Rao in the column.

While it is true that certain conduct might be proscribed that has an incidental limitation on speech, such a proscription must further an important public interest, be unrelated to a general suppression of free speech, and be no greater than necessary to the furtherance of that interest. *See e.g.,United States v. O'Brien*, 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968) (finding valid a federal law criminalizing the destruction or mutilation of a draft registration against a First Amendment challenge). Under the testimony here, the trial judge could reasonably conclude Rao's conduct did not fit within those incidental limits. Viewed in the light by which we must view it in this limited interlocutory appeal, we cannot say the trial judge abused his discretion in granting the temporary injunction. Tech's third issue is overruled.

## Over Broad

We must next consider Tech's fourth issue in which it contends the temporary injunction is overly broad. In presenting this issue, Tech avers that paragraphs 8(d), 8(e), and 8(l) are overly broad. In paragraph 8(d), and in relevant part, Tech is enjoined from making, condoning, or permitting "any statements to the effect that Rao has been expelled from the curriculum, that he has committed any conduct worthy of expulsion, or that he should be expelled from the curriculum." Paragraph 8(e), in relevant part, provides that Tech "shall not make - or condone or permit any faculty, staff or member of the

13

administration to make - any statements to the effect that Rao's autopsy article reveals that he lacks a moral compass or has a broken moral compass."  In relevant part, paragraph 8(I) provides that Tech "shall not do any thing, or make any oral or written statement, that would have the effect of interfering with Rao's ability to sit for any other examinations - licensing or otherwise - or interfering in any manner with Rao's participation in the medical school curriculum pending the trial of this cause."

Tech argues the above provisions are so broad and subject to subjective interpretation that "they virtually deprive" Tech of reasonable notice of what it is prohibited from doing.  In particular, it reasons that to be enjoined from making statements "to the effect" that Rao lacks a moral compass "could include almost any negative statement regarding Rao."  It also posits that to be enjoined from making any statement or doing anything that would have the effect of interfering "in any manner" with Rao's participation in the medical school curriculum "is so broad that it could include acts or statements that no reasonable person could anticipate as being embraced within the scope of the order."  Accordingly, it argues, in those regards, the acts proscribed in the injunction are not sufficiently specific.

We agree that in certain aspects, the injunction is over broad and should be modified[3] in the following respects:

Paragraph 8 is modified to read as follows:

---

[3]Tex. R. App. P. 43.2(b).

14

d. Texas Tech shall not make any statements that Rao has been expelled from the curriculum or that he has committed any conduct worthy of expulsion. This is not intended, and shall not be construed as limiting the Defendant's handling and defense of this litigation.

e. This subparagraph is deleted from the injunction.

l. Pending the trial of this cause, Texas Tech will allow Rao to sit for examinations - licensing or otherwise - customarily incident to Rao's studies pending the final disposition of this cause and will allow him to participate in the medical school curriculum pending such trial.

To the extent we have modified the temporary injunction, Tech's fourth issue is overruled.

In summary, all of Tech's issues are overruled, with the exception that its fourth issue is granted to the extent of the modification of paragraph 8 set out above. Accordingly, with the exception of the modification we have set out, the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Quinn, J., not participating.