NO. 07-08-0494-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 26, 2009
_____

ENRIQUE LETKEMAN and MARIA LETKEMAN,

Appellants

v.

ARTURO REYES, ANNA REYES, BRADY ROBINETTE, TERRI ROBINETTE,
PEDRO SANCHEZ and ELENA SANCHEZ,

Appellees
_____

FROM THE COUNTY COURT AT LAW NO. THREE FOR LUBBOCK COUNTY;

NO. 2008-562,386; HON. PAULA LANEHART, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

The matter before us involves the application of restrictive covenants to a house

being moved into the Patterson Estates subdivision. The house was originally built some

years ago and subsequently acquired by Enrique and Maria (Mary) Letkeman. The latter

had the abode cut in half, moved into Patterson Estates, and located on lot #2, a lot that

they intended to buy from Abe Friesen. Before completing the process, they were told by

one or more home owners in the development that their efforts violated several restrictive

covenants. Despite hearing these complaints, they continued their efforts. Suit to enforce

those covenants was initiated by Arturo and Anna Reyes, Brady and Terri Robinette, and Pedro and Elena Sanchez. Each owned a home in the subdivision. Upon convening a trial and receiving evidence, the trial court executed its judgment enjoining the Letkemans and Friesen "from allowing the residential structure they moved" in "to remain on" the lot. They were also given 60 days to comply with the directive.

Though the Letkemans assert several issues on appeal, we need only address two for they are dispositive of the appeal. And, after considering them, we conclude that the judgment must be affirmed.

*Issue One – Covenant #16*

The first issue we address involves whether the house moved on to the property was "pre-fabricated." This is of import because restrictive covenant #16 stated that: "[n]o *pre-fabricated* structures shall ever be permitted upon any lot, whether the same be moved in or constructed on the lot." (Emphasis added). If the Letkemans' structure was "pre-fabricated," then moving it into the subdivision violated that covenant. Of course, they argue that it was not. To them, the word encompassed only structures built in a factory and then moved in sections or by wall panels onto a site where it was then constructed or assembled into a house. Because the trial court interpreted the provision otherwise, it purportedly erred. We overrule the contention and issue.

*Applicable Law*

Statute requires that restrictive covenants be "liberally construed" to give effect to their purposes and intent. *See* TEX. PROP. CODE ANN. §202.003(a) (Vernon 2007). Moreover, when interpreting them, we apply the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Rakowski v. Committee to Protect*

*Clear Creek Village Homeowners' Rights,* 252 S.W.3d 673, 676 (Tex.App.–Houston [14th Dist.] 2008, pet. denied); *Owens v. Ousey,* 241 S.W.3d 124, 129 (Tex.App.–Austin 2007, pet. denied). Per those rules, we attempt to ascertain the true intention of the writer as expressed in the instrument, *Gulf Ins. Co. v. Burns Motors*, 22 S.W.3d 417, 424 (Tex. 2000), by examining the writing as a whole and in light of the circumstances present at its execution. So too does authority obligate us to assign to the words used their common meaning. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657-58 (Tex. 1987). Finally, the exercise in which we engage involves a question of law. Thus, we need not defer to the construction assigned by the trial court; rather, we address the matter *de novo. Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390 (Tex. App.–Fort Worth 2005, pet. denied); *see also Kothmann v. Rothwell,* 280 S.W.3d 877, 879 (Tex. App.–Amarillo 2009, no pet.).

*Application of Law*

As written in the covenants, the word in question contains the root "fabricated" and prefix "pre." The definitions assigned to the latter include "earlier than," "prior to," "before," MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 975 (11th ed. 2003), or "in advance," and "beforehand" to name a few of the most common. Dictionary.com, http://dictionary.reference.com (last visited October 15, 2009). In turn, "fabricate" includes such meanings as to "invent," "create," "construct," "manufacture," "to construct from diverse and usually standardized parts," MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 447 (11th ed. 2003); or to "make by art or skill and labor," and "make by assembling parts or sections." Dictionary.com, http://dictionary.reference.com (last visited October 15, 2009). Combining this root and prefix, therefore, gives us a word meaning "to fabricate or construct beforehand," "to manufacture in standardized parts or sections ready for quick

3

assembly and erection . . .," *id.*, or to "fabricate the parts of [as a house] at a factory so that construction consists mainly of assembling and uniting standardized parts." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 978 (11th ed. 2003). While those definitions do not mirror each other, they have one aspect in common. Each connotes something that is already or previously made (whether made as a whole or in parts for later assembly) as opposed to something that is erected from scratch. Moreover, this concept of the word reflects what Charlotte Patterson, one of the individuals who created the restrictions, desired at the time it was selected.

Patterson testified that "one of the main things that [she] wanted to enforce . . . [was] the fact that there would never be anything moved in on that property; that it would be all new construction." In other words, she intended that the "primary dwellings" be newly built. Her intent was also enforced through the years, according to the record. Patterson spoke of other instances wherein those owning or about to buy property in the subdivision solicited permission to move a previously built house onto their respective lot. In each instance, Patterson denied the request. Indeed, the Sanchezes themselves were one of those soliciting such approval. After being told that the homes were to consist of all new construction, they built one on their lot.

Patterson also testified that it did not matter whether the "pre-fabricated" house was new or ready-built. Prospective lot owners wanting to install either were told "no"; instead, the house had to be "comparable to what was out there, which was a site-built home and, you know, that we wouldn't allow anything else."[1]

---

[1]The only non-site-built house in the Patterson Estates was that of the Letkemans, according to the witness.

4

That the intent espoused by Patterson was implicit in the word "pre-fabricated" apparently was understood by the Letkemans. That this is true is exemplified by a writing they signed on April 17, 2008. The document was directed to the "Property Owners" in the subdivision and was created for the purpose of securing approval to complete the house. In it, the Letkemans represented that they "reviewed the deed restrictions," and "realized" that their conduct "goes against the intention of the dedicators for [sic] the deed restrictions and property owners (See #16 of the Deed Restrictions attached)." Since their conduct involved effort to move in and remodel an old house built elsewhere, one can reasonably view their statement as recognition that their home fell within the scope of "pre-fabricated."

Given our obligation to liberally construe restrictive covenants, the common meaning assigned to the word "pre-fabricated" as evinced by various dictionaries, the intent sought to be achieved by those drafting covenant #16, the testimony regarding the consistent application of that intent through the years, and the Letkemans' own realization that their efforts went "against" the "dedicators" intent as that intent was memorialized in the covenant, we interpret "pre-fabricated structures" as including houses that were previously built as opposed to those erected from scratch. To this, we add that no one disputed that the Letkemans' house was made, constructed, manufactured, or built long ago and before being moved to the Patterson Estates subdivision. Nor did anyone dispute that the structure was cut in half or into sections for later assembly in the subdivision. Consequently, we include it within the category of "pre-fabricated" and conclude that the trial court correctly did so as well.

*Issue Three - Permanent Injunction*

In the last issue we address, the Letkemans posited that the trial court abused its discretion by enjoining them to move the house from the subdivision. This was purportedly

5

so because their opponents failed to prove a substantial violation of the restrictive covenants and the equities did not favor such relief. We overrule this contention as well.

*Applicable Law*

Whether to grant a permanent injunction lies within the trial court's discretion. *See Operation Rescue-Nat'l v. Planned Parenthood of Houston*, 975 S.W.2d 546, 560 (Tex. 1998) (describing the standard of review as one of abused discretion). Generally, that discretion is abused and subject to reversal when the court acted without reference to guiding rules or principles or misapplied the law to the established facts. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 791 (Tex. App.–Houston [1st Dist.] 2001, no pet.). So too may decisions lacking sufficient evidentiary support evince abused discretion. *Envoy Med. Sys. v. State*, 108 S.W.3d 333, 335 (Tex. App.–Austin 2003, no pet.).

Next, injunctive relief ordinarily may issue when the applicant proves the occurrence of a wrongful act giving rise to imminent and irreparable harm for which there is no adequate remedy at law. *Jim Rutherford Investments, Inc. v. Terramar Beach Community Ass'n,* 25 S.W.3d 845, 849 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). These elements change somewhat when the dispute concerns the enforcement of restrictive covenants. *Id.* There, one need not establish the presence of imminent and irreparable injury. *Id.* Nor must he prove the presence of actual damages arising from the breach. It is enough simply to prove a distinct or substantial breach. *Voice of Cornerstone Church Corp. v. Pizza Property Partners,* 160 S.W.3d 657, 667-68 (Tex. App.–Austin 2005, no pet.).

*Application of Law*

As concluded in the first issue, the Letkemans breached that restrictive covenant prohibiting them from moving a pre-fabricated structure into the subdivision. Furthermore,

6

the record illustrates that they knew of the restriction and objections raised by their prospective neighbors before completing the project.[2] So too did their efforts continue despite having this knowledge. And though some evidence appears of record indicating that the finished structure could actually enhance neighboring property values, it does not matter that the Reyeses and other home owners may suffer no actual damages.

That others had sought and been denied permission to do what the Letkemans did is another indicia to be considered. Moreover, those others apparently heeded the intent of the dedicators, unlike the Letkemans. From the latter circumstance, one could reasonably deduce that the Letkemans sought more than equity but rather unique treatment.

The foregoing leads us to hold that the record contains evidence from which the trial court could reasonably conclude that the Letkemans substantially violated covenant #16 and that the equities favored curtailing that violation. Simply put, it did not abuse its discretion by enjoining them to remove the house.

The judgment of the trial court is affirmed.


Brian Quinn
Chief Justice

---

[2]We refer to their neighbors as "prospective" because they had yet to buy the lot from Friesen.