COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RAMANBHAI PATEL | § | No. 08-08-00301-CV |
| Appellant, | § | Appeal from the |
| v. | § | 83rd District Court |
| | § | of Pecos County, Texas |
| JIMMY WOFFORD, DAVID HARDWICK, RUDY RAMOS, AND HULON PASS | § | (TC# 6595) |
| | § | |
| Appellees. | § | |

## **O P I N I O N**

This appeal involves restrictive covenants within a residential subdivision in Fort Stockton, Texas. Ramanbhai Patel appeals from a judgment rendered in favor of Appellees Jimmy Wofford, David Hardwick, Rudy Ramos, and Hulon Pass. Patel also complains of a permanent injunction prohibiting him from building a triplex on property he purchased in the neighborhood. For the reasons that follow, we reverse and render.

### BACKGROUND

Appellees are owners of real property in the Arnett Addition in the City of Fort Stockton, Pecos County, Texas. Patel bought Lot One, Block One of the Arnett Addition from L.V. Arnett and his wife. Patel intended to build a triplex on Lot One, and obtained a "Waiver of Protective Covenants" from Arnett, who at the time was the sole remaining member of the Architectural Control Committee for the Arnett Addition. The Waiver was executed and filed of record with the Pecos County Clerk in March 2008. A few days after execution of the Waiver, Arnett resigned from the Committee and appointed David Hardwick, Rudy Ramos, and Hulon Pass as new Committee

members. In early April, Arnett forwarded Patel's construction plans to the Committee. The Committee then sent a letter to Patel advising that his plans failed to comply with the subdivision's Outline of Protective Covenants. Patel did not respond to the letter and at some point, he began construction by installing a pad, batting boards, and lines. Although counsel for Appellees asked Patel in writing to cease and desist, Patel refused to do so.

In February 2008, the City of Fort Stockton passed an ordinance rezoning all of Lot One to a "Multi-Family Dwelling District" for the triplex's construction. In April 2008, Appellees filed suit for breach of contract, breach of covenant, declaratory judgment, and a permanent injunction against Patel and the City. Following a hearing, the trial court granted a temporary injunction prohibiting Patel from building a triplex on Lot One and resuming construction on the property without complying with the restrictive covenants.

In October 2008, the trial court entered judgment in favor of Appellees. The court found Appellees had standing to bring suit and that the Waiver was ineffective and unauthorized. It further found Patel materially breached the covenant, and that because the property and rights involved were unique and irreplaceable, it was impossible to accurately measure the damages caused by Patel's breach. As a result, the court entered a permanent injunction. As for the City, the court entered a declaratory judgment that the ordinance did not waive the restrictive covenants and that the City lacked authority to enact a less restrictive ordinance affecting the subdivision.

In written findings of fact and conclusions of law, the court determined: (1) Patel failed to obtain the Committee's approval with respect to his construction plans; (2) Arnett lacked authority to modify the covenants because he did not own more than fifty percent of the lots within the subdivision; and (3) Arnett issued the Waiver without authority. This appeal follows.

**THE ISSUES**

In his first issue, Patel complains the trial court erred when it found that he failed to obtain the Committee's approval of the plans. In Issue Two, he contends the trial court erred when it determined that Arnett lacked the authority to modify the protective covenants because he did not own more than fifty percent of the lots in the subdivision. In Issue Three, Patel argues that the trial court erred when it concluded that Arnett acted without authority in waiving the protective covenants. Finally, in Issue Four, he complains that the permanent injunction constitutes an abuse of discretion.

Patel claims he obtained approval of the plans from Arnett, the sole and surviving member of the Architectural Control Committee, and that Arnett waived the restriction limiting construction to single family dwellings or duplex structures. Because Arnett was the sole remaining committee member when he signed the Waiver, it was unanimous. Patel also argues it is immaterial that Arnett was the only member of the Committee because "[t]he covenants are silent with regard to the number of committee members necessary to constitute a quorum and the number or percentage of committee members required to waive a covenant."

**THE COVENANTS**

The Outline of Protective Covenants regarding the Arnett Addition provides: "The residential area covenants in Part C in their entirety shall apply to All of Blocks 1, 3, 4, 5, 6, 7, 8, 9, and 10, Arnett Addition to City of Ft. Stockton, Pecos County, Texas." Because Patel's property is located on Block One, these covenants apply to his property. The following provisions are relevant to our analysis:

PART C-1. LAND USE AND BUILDING TYPE.

No building shall be erected, altered, placed or permitted to remain on any lot other than single family dwellings except that duplexes may be constructed on Lots 1, 2, 3, 4, in Block 1.

.        .        .

## C-2.  ARCHITECTURAL CONTROL.

No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of external design with existing structures and as to location with respect to topography and finish grade elevation.  No fence or wall shall be erected, placed or altered on any lot nearer to any street that [sic] the minimum building set-back line except that on corner lots backing to another corner lot facing the opposite direction, a fence may be erected along the rear lot line to the side street lot line and forward along the side street lot line to within ten feet of the front of the dwelling, thence across the side yard to the dwelling.  Approval shall be as provided in Part D.

.        .        .

## D-1. MEMBERSHIP.

The Architectural Control Committee is composed of L.V. ARNETT, W.W. VICKREY and WALTER BUTZ, all of whom reside in Ft. Stockton, Texas.  A majority of the committee may designate a representative to act for it.  In the event of the death or resignation of any member of the committee, the remaining members shall have full authority to designate a successor.  Neither the members of the committee, nor its designated representative shall be entitled to any compensation for services performed pursuant to this covenant.  At any time, the then recorded owners or a majority of the lots shall have the power through a duly recorded written instrument to change the membership of the committee of [sic] to withdraw from the committee or restore to it any of its powers and duties.

## D-2.  PROCEDURE.

The committee's approval or disapproval as required in these covenants shall be in writing.  In the event the committee, or its designated representatives, fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complies (sic) with.

Arnett "waive[d] Part C-1, Land and Building Type in the Protective Covenants . . . and agree[d] to allow Ramanbhai Patel to begin construction of multi-family dwellings on the property described in such Protective Covenants." The waiver related only to Lot 1, Block 1 of the Arnett Addition.

## ARNETT'S AUTHORITY

The parties agree that because the Outline of Protective Covenants is unambiguous, the court must interpret it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 137 (Tex.App.--El Paso 1991, no writ). They also agree that Arnett was the sole remaining member of the three original Committee members when he executed the Waiver. Under Part D-1, he thus had authority to act as a representative on behalf of the entire Committee. Even if Patel's plans failed to comply with the subdivision's covenants, under Part D-1 and Part D-2 Arnett had authority to provide – and did provide – his written approval of Patel's plans. Consequently, the Committee approved of the plans within the thirty-day period as required by the covenants. We thus sustain Issues One and Three.

We turn now to Issue Two, in which Patel complains that the trial court erred in finding that Arnett lacked authority to modify the protective covenants because he did not own more than fifty percent of the lots in the subdivision. We agree. The only provision relating to the powers of the majority owners is Part D-1. And the power is specifically limited to changing the membership of the Architectural Control Committee by a duly recorded written instrument. Certainly, the majority owners could have acted to change the membership following the deaths of two Committee members. It failed to do so. Because the owners failed to exercise their rights under the covenants, Arnett remained the Committee's designated representative until he appointed his successors. We sustain Issue Two.

## PERMANENT INJUNCTION

We review a permanent injunction for an abuse of discretion. *Jim Rutherford Investments, Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex.App.--Houston [14th Dist.] 2000, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer*, 701 S.W.2d at 242. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242.

In Issue Four, Patel argues the trial court erred in granting the permanent injunction to prevent him from building the triplex. A party requesting injunctive relief must show the existence of a wrongful act, the existence of imminent harm, the existence of irreparable injury, and the absence of an adequate remedy at law. *Jim Rutherford Investments, Inc.*, 25 S.W.3d at 849. However, these elements change when the dispute concerns the enforcement of restrictive covenants. *Letkeman v. Reyes*, 299 S.W.3d 482, 486 (Tex.App.--Amarillo 2009, no pet.). In that instance, the movant need not establish the presence of imminent and irreparable injury, or the presence of actual damages arising from the breach. *Letkeman*, 299 S.W.3d at 486. Instead, the movant may simply prove a distinct or substantial breach, or that the respondent intends to perform an act that would breach the restrictive covenant. *Letkeman*, 299 S.W.3d at 486; *Jim Rutherford Investments, Inc.*, 25 S.W.3d at 849.

Our resolution of the first three issues guides our analysis here. We conclude that since Arnett had authority to grant the waiver, Patel did not breach the restrictive covenants. Because the

trial court abused its discretion in granting the permanent injunction, we sustain Issue Four. Having

sustained all issues for review, we reverse and render judgment for Patel.


July 28, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)