

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOEL WARD, | § | No. 08-22-00224-CV |
| Appellant, | § | Appeal from the |
| v. | § | 22nd Judicial District Court |
| JEROLD GALLAGHER, | § | of Hays County, Texas |
| Appellee. | § | Cause No. 18-1995 |

## MEMORANDUM OPINION

Appellant, Joel Ward, and Appellee, Jerold Gallagher, are neighbors in the Section 3 Burnett Ranch Subdivision in Hays County, Texas.[1] Gallagher sued Ward for civil damages pursuant to an alleged breach of certain restrictive covenants governing the subdivision and to otherwise enjoin him from continuing to build an outbuilding, that is, a "large barn type structure," on his property. After a bench trial, the trial court issued a final judgment and permanent injunction enjoining Ward from using the challenged building, which had by then been completed, for commercial or residential purposes, or in any way inconsistent with a three-car garage, or to otherwise add square footage or substantially alter its structure.

---

[1] This case was transferred from the Austin Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of that court to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

In his appeal, Ward urges the trial court committed error by failing to issue findings of fact and conclusions of law, by its interpretation and application of pertinent restrictive covenants, and by abusing its discretion in issuing injunctive relief.

We affirm.

## I. BACKGROUND

Ward and Gallagher own adjacent homes with acreage in the Burnett Ranch Subdivision #3 in Wimberley, Texas. The subdivision is subject to a Declaration of Covenants, Conditions, and Restrictions (the Declaration) that was filed of record in Hays County on March 30, 1977, more than 20 years before either party purchased their property.

In 2010, Ward obtained and posted a permit to build a pole barn on his property. After he was sued in a justice court by neighbors on either side of his property, including Gallagher, he wrote letters to other property owners of the subdivision. He implored that any property owner who has any outbuilding such as a storage building, well house, green house, hobby shop, water system, horse sheds, or barn, may not be considered to be compliant with the very narrow range of outdated portions of restrictions. Ward asked for help with his effort to amend the restrictions to "fit the current use and needs of many property owners at this time[.]" The court found the matter was not yet ripe for its consideration. Apart from the lawsuit, Ward was unsuccessful in his attempt to amend the restrictions. He did not then complete the pole barn, though he did complete the pad site.

In May 2018, Ward began construction of a 40 by 70-foot detached outbuilding on his property. He soon obtained a residential permit for building a garage with a bathroom.[2] In August 2018, Gallagher again sued Ward to stop construction of the outbuilding. Within days, the trial

---

[2] From our record, we understand that Ward had no other garage on his property.

court issued an agreed temporary restraining order enjoining Ward from further construction beyond getting the outbuilding "dried in." The temporary restraining order expired 14 days later.

In December 2018, Gallagher filed an amended petition alleging Ward was proceeding with construction, again alleging he was violating certain restrictions and seeking injunctive relief. Ward represented the building was by then "pretty close to being completed," and the trial court denied Gallagher's request.

In January 2020, Gallagher filed his live pleading, a third amended petition. As did the previous petitions, it alleged violations of the Declaration's restrictive covenants. The petition stated the outbuilding was not in compliance and Ward had failed to keep his property clean and orderly. Gallagher again sought injunctive relief.

Ward's live pleading, an answer to the third amended petition, raised a general denial along with several affirmative defenses, including ambiguity of the restrictive covenants. Ward's answer also contained counterclaims for declaratory judgment.

The matter went to trial on February 24, 2021.[3] At trial, counsel for Gallagher announced he no longer sought to have the outbuilding torn down; rather, he sought to ban its commercial use and to otherwise require Ward to keep his property orderly. Gallagher later supplemented pleadings seeking a permanent injunction governing the continued existence or use of the outbuilding and to require orderly maintenance of Ward's property.

Gallagher testified at trial that he bought his property because it was located in a retirement area. He looked for a wooded area, nice and clean, where he could bring his kids to enjoy the outdoors. He said the existence of deed restrictions was important to him. He testified as to the terms of the deed restrictions, applicable to the subdivision properties, and the content of the letter

---

[3] This trial was held, via Zoom, days after the record freeze of 2021 and during the continuing COVID-19 pandemic. Due to an internet outage, it was continued shortly after the start of afternoon proceedings; it resumed and was concluded on March 3, 2021.

by which Ward sought amendments. Gallagher also presented photo evidence of Ward's outbuilding and property generally.

Ward testified he retired in 2009. He described that he spends his days fixing things for fun. He has rebuilt a golf cart, fixed up a used lawnmower, rehabbed abandoned woodworking machines, and built cabinets and furniture. He never charged for his work nor advertised for projects. Ward testified in detail about his property and the 2800-square-foot outbuilding he had built and used primarily for woodworking. This detail will be discussed below.

At the close of evidence, the trial court entered a final judgment on August 17, 2022. The trial court found Ward in violation of the deed restrictions and issued a permanent injunction against him. In lieu of removal of the building, the trial court ordered that Ward was enjoined from:

1) Using the Building or the Property for commercial purposes;

2) The sale of goods or services at the Building or on the Property;

3) Receiving customers at the Building or on the Property for the purpose of purchasing goods or services;

4) Shipping goods from the Building or from the Property for commercial purposes;

5) Receiving commercial delivery of material at the Building or the Property;

6) Erecting or placing any sign or advertisement at the Building or on the Property concerning goods or services created, manufactured or generated in the Building or on the Property;

7) Making any square footage addition or substantial alteration to the Building; [and]

8) Using the Building for any use not consistent with a 3 car garage, including for residential purposes.

Additionally, as to Ward's counterclaims, the trial court awarded a take nothing judgment. Ward requested findings of fact and conclusions of law, later followed by a notice of past-due findings of fact and conclusions of law. The trial court did not enter any findings of fact or conclusions of law. This appeal followed.

## II. DISCUSSION

Ward brings nine issues on appeal. His first issue contends the trial court erred in not issuing findings of fact and conclusions of law. That issue is followed by eight remaining issues addressing governing restrictions covering two topics: (1) Restrictions 1 and 2, which deal with structures on properties; and (2) Restriction 6, which is a directive requiring owners to keep their property clean and orderly.

### A. Standard of review

On appeal from a bench trial, we give a trial court's fact findings the same weight as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co. Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). These implied findings are not conclusive when a reporter's record and a clerk's record are included in the appellate record, and they may be challenged for legal and factual sufficiency. *Goepp v. Comerica Bank & Trust, N.A.*, No. 03-19-00485-CV, 2021 WL 2878562, at *6 (Tex. App.—Austin July 9, 2021, no pet.) (mem.op.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

When reviewing legal sufficiency, an appellate court is to "consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports it." *Spence v. Davis*, No. 03-22-00179-CV, 2023 WL 427063, at *2 (Tex. App.—Austin Jan. 27, 2023, no pet.) (mem. op.) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)). We defer to the trial court's determination of factual disputes and credibility, and on these matters, we may not substitute our judgment for that of the trial court. *Id.* (citing *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "The factfinder can resolve inconsistencies in the testimony of any witness, draw inferences from the evidence presented, and

choose between conflicting inferences." *Id.* (citing *Lopez v. Crisanto*, 583 S.W.3d 926, 930 (Tex. App.—El Paso 2019, no pet.)). We will not overturn the trial court's inference "unless the evidence supports only the opposite inference." *Id.* (citing *Lopez*, 583 S.W.3d at 930). "We presume that the factfinder resolved evidentiary conflicts in favor of the order if a reasonable person could do so." *Id.* (citing *City of Keller*, 168 S.W.3 at 821). "The trial judge can observe and assess witnesses' demeanor and credibility and can sense influences that may not be apparent from reading the record." *Id.* (citing *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

We review a trial court's interpretation of a restrictive covenant de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279 (Tex. 2018).

"A trial court's issuance of injunctive relief is reviewed for abuse of discretion." *Operation Rescue–Nat'l v. Planned Parenthood of Houston & Southeast Tx, Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). The test for whether a trial court abused its discretion is whether it "acted without reference to any guiding rules and principles," *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)), or failed to apply the law correctly. *See In re Texas Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex. 2006).

## B. Failure to issue findings of fact and conclusions of law

In his first issue, Ward argues the trial court erred by not issuing findings of fact and conclusions of law after his timely request. Ward asserts he is harmed by the trial court's failure to issue findings for two reasons. First, he argues it is unclear whether the trial court determined he violated Restriction 6, the "clean and orderly" restriction. Second, Ward claims he cannot effectively challenge the trial court's injunction without knowing the factual bases upon which the trial court ruled.

Texas Rule of Civil Procedure 296 provides that a party to a bench trial "may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. If a trial court fails to issue findings in response to a timely request, "the court of appeals must presume the trial court made all the findings necessary to support the judgment." *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam).

When the matters in question are not disputed, findings of fact are not necessary. *Id.* (quoting *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006)). If the facts are disputed, and a court fails to file requested findings of fact, an appellant's burden of rebutting every presumed finding may be so great that the appellant is prevented from properly presenting its appeal. *Id.* (quoting *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014)). Thus, a trial court's failure to respond to a timely and proper request for findings is presumed harmful unless the record "affirmatively shows that the complaining party has suffered no injury." *Id.* (quoting *BMC Software Belg., N.V.*, 83 S.W.3d at 794).

The test to determine if a party has been harmed by the trial court's failure to issue findings "is whether the circumstances of the case would require the party to guess the reason or reasons for the trial court's ruling." *Burnet Cent. Appraisal Dist. v. Millmeyer*, 287 S.W.3d 753, 756 (Tex. App.—Austin 2009, no pet.). "If there is only a single ground of recovery or a single defense, an appellant does not usually have to guess at the reasons for the trial court's ruling." *Vanloh v. Vanloh*, No. 03-08-00017-CV, 2008 WL 3984373, at *1 (Tex. App.—Austin 2008, no pet.) (mem. op.) (citing *Willms v. Americas Tire Co. Inc.*, 190 S.W.3d 796, 802 (Tex. App.—Dallas 2006, pet. denied).

First, Ward asserts he was harmed because it remained unclear whether the trial court determined he had violated Restriction 6, the clean and orderly restriction. There is no mention of such provision in the final judgment. Regarding this restriction, Ward claims the language is

ambiguous. Because our interpretation of a restrictive covenants is de novo, *Tarr*, 556 S.W.3d at 279, Ward has not shown he was harmed by the trial court's failure to respond to his timely request.

Second, Ward claims it was necessary to know the factual bases upon which the trial court granted injunctive relief for him to mount an effective challenge. Although the trial court did not issue findings of fact and conclusions of law, it did enjoin certain behaviors and tracked language from Restrictions 1 and 2. The language of the injunctions prompts us to imply that the trial court found Ward had violated the language of Restriction 2 requiring that a garage be no larger than "for three cars" and that there is a threat that Ward would use the building in a business or commercial manner in violation of Restriction 1.

We note this is not a factually complex case. As Ward's counsel stated at trial, there are very few documents. Regarding contested facts, he noted, "I think we agree that the pictures show what the pictures show and the building is as the building is reflected in the pictures presented. I think those facts are really not in dispute."

The issues at trial were also very limited. Gallagher's theory of recovery was based on Ward's violation of three restrictive covenants in constructing an outbuilding and failing to maintain his property. Ward's was the legal ambiguity of those same restrictive covenants. Ward's counsel stated at trial, "this case is about whether a property owner can enforce restrictive covenants against another property owner when those restrictions are not clearly worded."

We conclude Ward did not have to guess at the reasons for an adverse ruling because of the wording of the injunctive relief. The issues are limited and the facts of little dispute. Ward's brief indicates he was able to identify alleged error and he properly presented an appeal to this Court. For these reasons, we conclude the record affirmatively shows Ward was not harmed by the district court's failure to issue findings of fact and conclusions of law. *See Cox v. GMAC*

8

*Mortg., LLC*, No. 03-15-00440-CV, 2016 WL 5874872, at *1 n.2 (Tex. App.—Austin Oct. 7, 2016, no pet.).

We overrule Ward's first issue.

### C. Interpretation of Restriction 2

Ward's second, third, fourth, and fifth issues pertain to Restriction 2. Specifically, Ward urges the trial court erred in ruling regarding Restriction 2 in the following respects: (1) in failing to find that the restriction allows for Ward's outbuilding as a building other than a residence that is "used for the convenience and pleasure of the occupants of the dwelling"; (2) in failing to find the inclusion of "for not more than three cars" is a use limitation about which Gallagher neither complained nor produced evidence; (3) if this is a structural restriction, in failing to find "for not more than three cars" is ambiguous as a matter of law; and (4) if this is a structural restriction, in enjoining a use not consistent with a three car garage, when the restriction itself does not bar outbuilding uses. Before addressing each in turn, we   consider in general the nature of restrictive covenants.

"A 'restrictive covenant' is a negative covenant that limits permissible uses of land." *Tarr*, 556 S.W.3d at 279 (quoting RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.3(3) (AM. L INST. 2000)). Restrictive covenants limit the use an owner or occupier can make of their property. *Id*. at 279. "The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal." *Id.* at 279 (citing *Curlee v. Walker*, 244 S.W. 497, 498 (1922)). While restraints on the free use of land are not favored, the Supreme Court of Texas has acknowledged that restrictive covenants can enhance the value of real property. *Tarr*, 556 S.W.3d at 279. When land is sold, the agreed-to covenants become a part of the consideration. *Id*.

9

Courts have long recognized, "[t]he buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots." *Id.* at 280 (quoting *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ)). To this extent, restrictive covenants "between the original owner and each purchaser is . . . mutual." *Id.* As a result, courts treat unambiguous covenants as valid contracts between individuals. *Id*. at 280.

As contracts, restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). "We presume the parties intend what the words of the contract say and 'interpret contract language according to its plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Phillips v. Rob Roy Homeowners Ass'n, Inc.*, No. 03-21-00543-CV, 2023 WL 2817342, at *5 (Tex. App.—Austin Apr. 7, 2023, no pet.) (mem. op.) (citing *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019)).

"Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at 'the covenants as a whole in light of the circumstances present when the parties entered the agreement.'" *Tarr*, 556 S.W.3d at 280 (quoting *Pilarcik*, 966 S.W.2d at 478). Covenants are unambiguous if they can be given a definite or certain legal meaning. *Pilarcik*, 966 S.W.2d at 478. But if they are susceptible to more than one reasonable interpretation, covenants are ambiguous. *Id*. "Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous." *Tarr*, 556 S.W.3d at 280 (quoting *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied)).

"A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the restrictive covenant as it is reflected in the language chosen." *Id*.; *see also* TEX. PROP. CODE ANN. § 202.003(a) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent."). Additionally, "[t]he words used in the restriction, and the

10

restriction as a whole, may not be enlarged, extended, stretched or changed by construction." *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). Thus, to validly limit a property owner's use, a covenant must plainly prohibit the use. *See Tarr*, 556 S.W.3d at 281-82. Courts should avoid any construction that will nullify a provision of a restrictive covenant. *Pilarcik*, 966 S.W.2d at 478-79.

Here, Restriction 2 provides the following pertinent language:

> No structure . . . shall be erected or placed, or permitted to remain on any portion of [the subdivision], other than a detached single frame dwelling . . . , [and] an outbuilding used in connection therewith. The term "out building" shall include only a garage, either attached or detached, for not more than three cars and service quarters detached from the building and such garage and service quarters may include a laundry room and laundry services to be used for the convenience of the occupants of the dwelling house and not as a public laundry. Except as herein set out, no other building may be erected upon any portion of [the subdivision], except a children's playhouse or building of like nature used for the convenience and pleasure of the occupants of the dwelling.

Ward brings several issues regarding Restriction 2. We address each issue in turn as he ordered them.

### (1) *Are outbuildings, which are used for convenience and pleasure, allowed under Restriction 2?*

In his second issue, Ward argues the trial court erred in finding that his outbuilding violates the Declaration because Restriction 2 allows for an outbuilding used for the convenience and pleasure of property owners. Ward argues that Restriction 2's plain language allows for a residence, an attached or detached garage, and a building "used for the convenience and pleasure of the occupants of the dwelling." Ward urges that his outbuilding is a "convenience building," like a children's playhouse, rather than a garage. Because Ward's argument fails to comport with what he argued in the trial court, his claim is waived.

"[P]arties are restricted in the appellate court to the theory on which the case was tried in the lower court." *Safety Cas. Co. v. Wright*, 160 S.W.2d 238, 245 (Tex. 1942); *see Hamrick v.*

*Ward*, 446 S.W.3d 377, 385 (Tex. 2014). Here, this "convenience building" theory is different from Ward's position at trial. At trial, both Ward and his attorney continuously called the outbuilding a garage. When asked whether he contended the outbuilding is a playhouse, Ward answered, "Well, no. It's a garage." And Ward's building permit from Hays county was granted for a "garage with bathroom."

The trial court's injunction prohibiting Ward from using the building for any use not consistent with a three-car garage implies a finding that the trial court determined Ward's outbuilding to be a garage rather than a "children's playhouse or building of like nature." This implied finding is supported by the evidence and in line with Ward's testimony. Unlike his argument on appeal, Ward did not advance his "convenience building" theory at trial as he does on appeal. *See Hamrick v. Ward*, 446 S.W.3d 377, 385 (Tex. 2014).

We overrule Ward's second issue.

### (2) *Did Gallagher properly raise the three-car use limitation?*

Through his third issue, Ward argues the trial court erred in not finding "for not more than three cars" to be a use restriction about which Gallagher neither complained nor produced evidence of violation. Ward argues this portion of Restriction 2 cannot logically be a structural limitation dictating size because it is ambiguous. Ward also claims Gallagher did not preserve a complaint or establish at trial that Ward had violated Restriction 2's provision restricting the use of the outbuilding to a garage.

As Ward did, we will address the size restriction in the next issue. Here, though, we first address Ward's argument that because it cannot logically be a structural limitation, this limitation must be a use limitation. Without citing any authority, Ward argues "for not more than three cars" must be a usage restriction because it cannot be a structural limitation, since, as a structural limitation, it is fatally ambiguous and nullified.

12

Here, the language in question provides "only a garage." The plain, ordinary meaning of a garage, in association with a dwelling, is a place to park motor vehicles.[4] *See Phillips*, 2023 WL 2817342, at *5; AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022), http://ahdictionary.com. Construing "for not more than three cars" as solely a usage restriction would be redundant of the common understanding of the term "garage" as a descriptor of the structure.

Even if this phrase is ambiguous, we have been cited with no authority stating we must interpret what seems to be a size limitation as a usage limitation. In the two cases we have found that discuss similar restrictions, the size imposed by a restriction was at issue. *See Fuller v. McDaniel*, 213 S.W.2d 574, (Tex. App.—Galveston 1948, no pet.) (where deed restriction said no more than two-car garage, construction of a three-car garage was argued to be in violation); *Johnson v. Linton*, 491 S.W.2d 189, 191-93 (Tex. App.—Dallas 1973, no pet.) (deed restriction of "not less than [a] two car size[d]" garage argued to be violated when part of garage was taken to construct stairs to a garage apartment). We find no support for Ward's argument that "for not more than three cars" imposes a usage restriction, as opposed to a size restriction, of the outbuilding.

Ward further argues that Gallagher did not preserve a complaint or establish at trial that Ward had violated Restriction 2's provision restricting the use of the outbuilding to a garage for storing no more than three cars. Gallagher responds that he was only required to show intent to violate the restrictive covenant, citing *Guajardo v. Neece*, 758 S.W.2d 696, 609 (Tex. App.—Fort Worth 1988, no writ), and there was ample evidence upon which the court could have determined Ward's intent to store more than three cars in the outbuilding.

A plaintiff's petition need only provide notice of the facts upon which the plaintiff bases its claim such that the defendant has sufficient information to prepare its defense. *Li v. Pemberton*

_____

[4]Restriction 2 states a garage in this subdivision may also include a laundry.

13

*Park Cmty. Ass'n*, 631 S.W.3d 701, 705 (Tex. 2021). Gallagher recited the entirety of Restriction 2 in his petition and alleged Ward had sought to build different types of structures, including a pole barn with a stated purpose of storing old vehicles, and Ward had stated different usages of the current outbuilding, including detached three-car garage and workshop. Gallagher's counsel stated at trial that Gallagher sought restrictions on use. Ward's counsel stated that the "key question" before the court on Restriction 2 was whether the "for no more than three cars" limitation was a structural limitation or a use limitation. These factors indicate the question of whether Ward's intended use of the building included storage of cars was properly before the trial court.

In moving for a permanent injunction to enforce restrictive covenants, the movant need only prove that the respondent intends to perform an act that would constitute a breach. *Patel v. Wofford*, 349 S.W.3d 50, 54 (Tex. App.—El Paso 2010, no pet.). There was evidence before the court upon which it could have determined that Ward intended to store more than three cars in the outbuilding. Ward testified he has stored vehicles in the garage, but not more than three. Ward represented to his neighbors in attempting to get the restrictions amended that he "never had any intentions of using any part of [his] land . . . for storing old cars," but at the time of trial, he drove a pick-up truck, owned two four-wheelers, a golf cart, and a lawnmower, and stored two-wheeled, enclosed trailers as well as three vintage, non-running Porsches on his property. He testified he changed the oil and rotated the tires on all his vehicles in the outbuilding and occasionally stored his truck inside. Moreover, the building was described as large enough to house more than three cars, and it had both a 20-foot carport across one end and a double-wide, barn-style doors on two sides.

We conclude there was sufficient evidence before the trial court to allow the court to infer that Ward intended to use the building for storage of more than three cars, *see Spence*, 2023 WL 427063, at *2, and the matter was properly before the court.

14

We overrule Ward's third issue.

### (3)   *Is the three-car restriction an ambiguous structural restriction?*

In his fourth issue, Ward urges that if Restriction 2 is a structural restriction, then it is ambiguous. Ward argues the term, "for not more than three cars," fails to give adequate notice of its requirements. He essentially contends the language is ambiguous as a matter of law because it does not provide measurements that are clearly defined.

On this record, however, we conclude the issue has been rendered moot as between the parties. To show a live controversy, there must have been a justiciable controversy before the court for adjudication, not merely a theoretical dispute. *Perrin v. City of Temple*, No. 03-18-00736-CV, 2020 WL 6533659, at *7 (Tex. App.—Austin Nov. 6, 2020, no pet.) (mem. op.). As of December 2019, or more than a year before trial, the challenged building had been fully constructed by Ward, Gallagher announced at trial that he no longer sought removal of the building but only to enforce relevant covenants regarding its use. That is, the size of the building no longer presented a justiciable controversy between the parties. Without such controversy over size, there is no need to consider Ward's argument on whether the term, "for not more than three cars," is an ambiguous restriction. *See* TEX. R. APP. P. 47.3 (requiring a court of appeals to hand down a written opinion that is as brief as practicable yet still addressing every issue raised and necessary to final disposition of the appeal).

We overrule Ward's fourth issue.

### (4)   *Injunction overly broad with respect to use?*

In his fifth issue, and final issue regarding Restriction 2, Ward argues if the "for not more than three cars" part of Restriction 2 is an unambiguous structural restriction, the trial court abused its discretion in enjoining any use of the outbuilding not consistent with a three-car garage because the restriction is not a use restriction. Ward cites specifically the trial court's injunction against

15

using the building for any use not consistent with a three-car garage, including for residential purposes.

As discussed above, the second sentence of Restriction 2 has both usage-limiting terms "garage" and size-limiting terms "for not more than three cars". In raising this issue, Ward ignores the usage limitation that is inherent in the term "garage." In including "residential purposes" in this part of the injunction, the trial court implies a finding that Restriction 2's second sentence limits use. We conclude the trial court's limitation of use based on the Restriction's use of "garage" is not an action without reference to guiding rules or principles. *See Cire*, 134 S.W.3d at 838–39. The trial court did not abuse its discretion in granting a permanent injunction prohibiting Ward from using the outbuilding for any use not consistent with a three-car garage. *See Operation Rescue–Nat'l*, 975 S.W.2d at 560.

We overrule Ward's fifth issue.

### D. Interpretation of Restriction 1

Ward raises three issues regarding Restriction 1 in his sixth, seventh, and eighth issues. Restriction 1 states, in relevant part: No business or commercial structure of any nature whatsoever shall be built on any portion of [the subdivision]. As to this restriction, Ward brings three arguments: (1) the trial court erred in not concluding the restriction was ambiguous as a matter of law; (2) the trial court erred in finding Ward had violated this restriction because there was no evidence to support such finding; and (3) the trial court erred in enjoining certain business activities when the restrictive covenants did not bar those uses and Gallagher had not requested such relief.

#### (1) *Is the no-business-structure restriction ambiguous?*

Ward argues in his sixth issue that Restriction 1 is not objectively clear and cannot be given a definite or certain legal meaning, Ward asserts the covenants do not define "business or commercial structure" nor otherwise indicate what physically constitutes such. He also claims that

16

Gallagher failed to present any evidence defining the meaning of this relevant language. He contends the trial court must have improperly imposed its own, extrinsic definition of the meaning of the words, "business and commercial structure."

We disagree that Gallagher was burdened with producing evidence of the meaning of "business and commercial structure." The plain meaning rule involves reading words and phrases according to their common usage. *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017). Because the restrictions do not define "business or commercial structure," we must give those words their common meaning. *See Duncan v. Prewett Rentals Series 2 752 Military, LLC*, No. 03-21-00244-CV, 2022 WL 3567780, at *4 (Tex. App.—Austin Aug. 19, 2022, no pet.) (mem. op.) (citing *Tarr*, 556 S.W.3d at 290). "Business" is "the activity of buying and selling commodities, products, or services." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022), http://ahdictionary.com. "Commercial" means "of or relating to commerce," and "commerce" is "the buying and selling of goods, especially on a large scale, as between cities or nations." *Id.* Thus, a "business or commercial structure" is a structure where the buying and selling of commodities, products, or services takes place.

In *Tarr*, the Supreme Court of Texas recognized that it had previously construed, in *MacDonald v. Painter*, a clause that allowed only "residence purposes" and forbade "mercantile business" on the property. *Tarr*, 556 S.W.3d at 290 (citing *MacDonald v. Painter*, 441 S.W.2d 179, 180 Tex. 1969)). The *MacDonald* court concluded that all the covenants in question there, including the one that forbade mercantile business, was "free of uncertainty and ambiguity." *See MacDonald*, 441 S.W.2d at 182.

Here, Restriction 1 provides "[n]o business or commercial structure of any nature whatsoever" is to be built in the subdivision. In context, Restriction 1 also specifically prohibits "commercial breeding of any animals or any distribution or trafficking [sic] of animals or any

17

distribution whatsoever." Restriction 2 allows laundry services for occupants but prohibits a public laundry. Restriction 2 also prohibits the placement of any home on any lot for rental purposes. Guided by *MacDonald*, we conclude the use of the phrase "[n]o business or commercial structure of any nature whatsoever," as included in Restriction 1 and further illustrated by specific prohibitions, is not ambiguous as a matter of law. *Id*.

We overrule Ward's sixth issue.

### (2) *Was there evidence to support a finding of violation?*

In his seventh issue, Ward argues there was insufficient evidence to support the trial court's implied finding that he violated Restriction 1 by conducting business and commercial activities with his outbuilding. Again, proof of intent to perform an act that would constitute a breach of the restrictive covenant is sufficient grounds for issuing an injunction. *See Patel*, 349 S.W.3d at 54; *see* 16 Tex. Jur. 3d *Covenants, Etc.* § 151 (2023); *Cornett v. City of Houston*, 404 S.W.2d 602, 606 (Tex. App.—Houston [1st Dist.], 1966, no pet.). Although Ward testified he had no plans for conducting business in the outbuilding, there was evidence from which the trial court could have inferred that he did. *See Spence v. Davis*, No. 03-22-00179-CV, 2023 WL 427063, at *2.

The record reveals several instances in which Ward flouted the directives of the restrictive covenants. Ward contacted his neighbors about amending the restrictive covenants in 2010, and he referred to the restrictions as outdated and incompatible with current uses and needs of the property owners. In that letter, he included a copy of the restrictions, stated that a very narrow range of buildings was allowed, and suggested neither storage buildings, hobby shops, nor barns might be considered acceptable. Nonetheless, the letter stated that Ward had a permit to build a pole barn at that time. And, although a justice court suit apparently dissuaded Ward from building in 2010, he continued with his plans to build on his lot in 2018.

Ward represented in the letter to his neighbors that he never planned to store vehicles on his property in the future, but by the time of trial, he had three non-running Porsches sitting on his lot in addition to several other vehicles.

The restrictive covenants plainly spell out a limit of four structures permitted on a property: a house, a garage, a children's playhouse or like structure, and a mobile home. The evidence showed Ward has seven: a house, the outbuilding in question but no other garage, a structure Gallagher referred to as an Alpine hut that Ward lived in while completing his house, a small storage building behind certain quail pens, another unidentified small building, and two shipping containers used for storage.

The restrictive covenants prohibit "commercial breeding of animals or any distribution or trafficing [sic] of animals or any distribution whatsoever," but Ward testified he raises bobwhite quail that he gives to ranchers for the purpose of repopulating the area.

Ward testified and the evidence showed he used the outbuilding for his professional-level woodworking hobby. The outbuilding houses a table saw, chop saw, planer, band saw, and dust collection system. Ward has built cabinets for all his family members and every piece of furniture for his farmhouse in Arkansas. He does so much woodworking he needs shipping containers to store wood for upcoming projects. Although Ward testified he never advertises nor asks for payment for his labor, he said he sometimes asks for payment for materials.

The outbuilding has a 20-foot-wide carport with a storage room across the north end. Ward's mechanic tools and welding equipment are on the carport. There is a floored attic over the length of the building accessible by stairs in the carport and an elevator Ward built. Pedernales Electric Co-op required Ward to install additional electrical boxes to service the outbuilding.

Ward testified he designed the 2800-square foot outbuilding just for himself, not for any business or commercial purpose, but he stated it could be used for commercial purposes, including

19

building furniture. Ward testified there is no parking lot; it is not open to the public; it does not have an office, a separate phone line, a waiting room, or a place to receive customers. It was permitted by Hays County as a residential structure.

We bear in mind that the trier of fact is the arbiter of the credibility of a witness and the weight to give to a witness's testimony. *See Pearson v. Pearson*, No. 03-13-00802-CV, 2016 WL 240683 at *7 (Tex. App.—Austin Jan. 15, 2016, no pet.) (mem. op.). There is sufficient evidence that reasonable and fair-minded people could determine, as the trial court implicitly did, that Ward has little to no regard of the restrictions placed upon him by the restrictive covenants and specifically that his construction and use of the outbuilding presents a threat that he would violate Restriction 1 by using the outbuilding as a business or commercial structure. *See City of Keller*, 168 S.W.3d at 822; *Patel*, 349 S.W.3d at 54.

We overrule Ward's seventh issue.

### (3)  *Did the trial court err in enjoining business activities?*

Ward urges in his eighth issue that the trial court abused its discretion in issuing an injunction barring business activity because the restrictive covenants do not bar that activity and because Gallagher did not request such relief.

We do not find the first part of Ward's argument to be persuasive. As we earlier stated, Restriction 1 prohibits business or commercial structures of any nature. Determining that such a pronouncement applies only to the structures on the property, and not to the activity conducted thereon, completely ignores the intent of the drafters of the restrictive covenant as reflected in the language chosen, which is a "paramount concern when construing covenants[.]" *Tarr*, 556 S.W.3d at 280.

As for the second part of his argument, Ward claims Gallagher did not seek injunctive relief barring him from using his property for business activities. However, in his supplement to his third

amended petition, Gallagher specifically sought "permanent injunctive relief governing (in accordance with the Deed Restrictions): . . . the continued existence or use of the structure that is the subject of this lawsuit[.]" The third amended petition stated, "Defendant again is violating or is seeking to violate the prohibition against business or commercial structures." These pleadings sufficiently request injunctive relief regarding Restriction 1's prohibition against the erection of a business or commercial structure or the use of the outbuilding in a business or commercial manner. And finally, we agree with Gallagher that the use of the outbuilding and the property were at issue in the entire case and, if not actually pleaded, those prohibited uses were effectively tried by consent. *See Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied); TEX. R. CIV. P. 67.

We overrule Ward's eighth issue.

### E. Interpretation of Restriction 6

Ward's ninth and final issue complains of the trial court's failure to find Restriction 6 ambiguous as a matter of law. Focusing on the terms "clean" and "orderly," Ward asserts Restriction 6 is ambiguous as these terms are undefined. He contends the restriction can be interpreted in more than one way, and Gallagher did not present any evidence as to the meaning of "clean" and "orderly."

Restriction 6 states:

All lots shall be kept in a clean and orderly condition at all times. No head of swine whatsoever, shall be kept on the premises at any time.

Although Ward asserts that there are many understandings of what is "clean" and "orderly," he does not assert any multiple interpretations of the phrase, inferring only that in the context of real property, "inherently covered in dirt and exposed to the elements[,]" these words might have multiple interpretations. In addition, even though Ward asserts ambiguity, both as an

21

affirmative defense and in his counterclaim for declaratory relief, he complains that Gallagher did not present any evidence defining these terms. We disagree with Ward's contentions.

"Clean" is defined as "[f]ree from foreign matter or pollution; unadulterated." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022), http://ahdictionary.com. "Orderly" is "[f]ree from disorder; neat or well-arranged." *Id.* Although one person's "clean and orderly" might be somewhat cleaner and more orderly than the next person's, "if a court can assign a meaning to [a phrase], the term is not rendered ambiguous solely because the application of 'its unquestionable meaning' to a certain factual situation is 'uncertain' or 'vague.'" *Tarr*, 556 S.W.3d at 290 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 31-32 (2012)). We conclude the record does not establish any ambiguity regarding Restriction 6's terms.

We overrule Ward's ninth issue.

### III. CONCLUSION

We find the restrictive covenants in question to be unambiguous and the trial court's application of them to Ward to be supported by the record. The trial court did not abuse its discretion in granting injunctive relief. We affirm the judgment of the trial court.

GINA M. PALAFOX, Justice

June 28, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

22